UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PINA M. ORDEN,

                                  Plaintiff,

                                                                                                   Case # 17-CV-6455-FPG

v.

                                                                                                   DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

**INTRODUCTION**

      Pina M. Orden brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

      On November 7, 2013, Orden applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 205-06. She alleged disability since March 11, 2013 due to neck, shoulder, arm, and hip injuries. Tr. 223. On November 2, 2015, Orden and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge William M. Manico ("the ALJ"). Tr. 36-80. On January 5, 2016, the ALJ issued a decision finding that Orden was not disabled within the

---

[1] References to "Tr." are to the administrative record in this matter.

1

meaning of the Act. Tr. 17-32. On March 16, 2017, the Appeals Council denied Orden's request for review. Tr. 1-6. Thereafter, Orden commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Orden's claim for benefits under the process described above. At step one, the ALJ found that Orden had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. At step two, the ALJ found that Orden's multiple shoulder impairments, degenerative disc disease, and right hip pain constitute severe impairments. Tr. 19-21. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 21.

Next, the ALJ determined that Orden retains the RFC to perform sedentary work[2] with additional limitations. Tr. 21-31. Specifically, the ALJ found that Orden must alternate between sitting and standing approximately every 45 minutes; can occasionally climb ramps or stairs, balance, and stoop; and cannot kneel, crawl, or climb ladders, ropes, or scaffolds. Tr. 22.

At step four, the ALJ relied on the VE's testimony to determine that this RFC prevents Orden from performing her past relevant work as a waitress. Tr. 31. At step five, the ALJ relied on the VE's testimony and found that Orden can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 31-32. Specifically, the VE testified that Orden can work as a surveillance system monitor, inspector, and dowel inspector. Tr. 32. Accordingly, the ALJ concluded that Orden was not "disabled" under the Act. *Id.*

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

**II.     Analysis**

Orden argues that remand is required because the ALJ violated the treating physician rule. ECF No. 10-1 at 9-15.  Specifically, Orden asserts that the ALJ did not provide "good reasons" for discounting the opinion of her treating physician Yehuda Nussbaum, D.O.  The Court agrees.

**A.     Treating Physician Rule**

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527).  Under this rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive.  The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues."

*Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).

### B. Dr. Nussbaum's Opinion

On November 5, 2015, Dr. Nussbaum completed a Physical Residual Functional Capacity Questionnaire that evaluated how Orden's impairments affect her ability to work. Tr. 396-400. Dr. Nussbaum indicated that he had been treating Orden for three years. Tr. 396. He noted that Orden's symptoms include limited or decreased range of motion, right thigh numbness/paresthesia at the surgical site, and pain that is constant, aching, worse with activity, and increases throughout the day. *Id.* As to the clinical findings and objective signs supporting Orden's symptoms, Dr. Nussbaum indicated that there was confirmed pathology and radiological results and that physical examination revealed decreased range of motion and pain. *Id.*

Dr. Nussbaum opined that Orden can rarely lift less than 10 pounds. Tr. 398. He also opined that Orden can sit for 45 minutes at a time, stand for 20 minutes at a time, and sit, stand, and walk less than two hours total in an eight hour workday. Tr. 397-98. He further indicated that Orden must walk around for about two minutes every 45 minutes, and that she must be able to shift positions at will between sitting, standing, and walking. Tr. 398.

Dr. Nussbaum opined that Orden cannot stoop, crouch, squat, or climb ladders, can rarely look up or down, twist, or climb stairs, and can occasionally turn her head right and left. Tr. 399. He also indicated that Orden can reach with her right arm only 50% of an eight hour workday. *Id.*

Dr. Nussbaum opined that Orden requires unscheduled breaks every 30 minutes that last 30 minutes to one hour. Tr. 398. He also opined that Orden's pain or other symptoms are severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks. Tr. 397. He noted that Orden's impairments are likely to produce "good days" and "bad

days," and that she is likely to be absent from work four or more days per month due to her impairments or treatment. Tr. 399. Dr. Nussbaum indicated that Orden's impairments have lasted or can be expected to last at least 12 months. Tr. 396.

### C. The ALJ's Analysis of Dr. Nussbaum's Opinion

#### 1. Rejection of Only Medical Opinion

As an initial matter, Dr. Nussbaum's assessment was the only opinion as to Orden's physical ability to perform work-related functions[3] on a regular and continuing basis.[4] Regardless of whether the ALJ properly discounted this opinion, his rejection of the only medical opinion as to Orden's physical functional capabilities left a significant gap in the record. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original). Moreover, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted).

Although the RFC assessment is consistent with Dr. Nussbaum's prescribed lifting limitation and recommendation that Orden be able to sit and stand at will, the ALJ found Orden capable of sedentary work, which requires prolonged sitting, despite Dr. Nussbaum's finding that

---

[3] *See* S.S.R. 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) ("Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."); *see also* 20 C.F.R. § 404.1545(b).

[4] *See* S.S.R. 96-8p, 1996 WL 374184, at *2 ("RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") (emphasis in original); *see also* 20 C.F.R. § 404.1545(b).

Orden can sit for less than two hours total in an eight-hour workday. The ALJ did not specifically explain why he rejected this portion of Dr. Nussbaum's opinion; he only noted later in his decision that Orden did not "complain[] of pain upon sitting, except in her [Activities of Daily Living] and pain questionnaires and in Dr. Nussbaum's RFC findings." Tr. 30. It is unclear to the Court how the ALJ, who is not a medical professional, determined that Orden can perform sedentary work without a supporting medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

### 2. Failure to Provide "Good Reasons"

The ALJ summarized Dr. Nussbaum's opinion and afforded it "little weight" based on its inconsistency with the evidence and with the findings of neurologist Angel Boev, M.D. Tr. 28-29. These reasons will be discussed in turn below.

#### i. Inconsistency with the Evidence

The ALJ found that Dr. Nussbaum's "limitations concerning [Orden]'s need for unscheduled breaks and sit/stand limitations at one time, are not consistent with the evidence. [Dr. Nussbaum] provides no range of motion testing to support his allegations. Though he notes restricted range of motion, he does not identify by how much [Orden] is restricted, nor does he point out where she is limited." Tr. 29 (citing Tr. 396-97).

When an ALJ declines to give controlling weight to a treating physician's opinion, one of the factors he must consider in determining how much weight it should receive is "the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion." 20 C.F.R. § 404.1527(c)(3). Here, Dr. Nussbaum's opinion—which is on an SSA form that has little space for the physician to elaborate—only generally notes that Orden has limited or decreased range of

8

motion and that her examinations have shown decreased range of motion. Tr. 396. Dr. Nussbaum's treatment notes, however, document numerous occasions when he performed range of motion testing on Orden and specifically indicate where she is limited. Tr. 315-94.

On January 18, 2013, for example, shortly after Orden was in a motor vehicle accident, a progress note from Dr. Nussbaum's office reveals that she exhibited decreased range of motion in the right shoulder, cervical back, and thoracic back, and that she had tenderness, pain, and spasms in those areas. Tr. 393-94. About one month later, Orden had decreased range of motion in the cervical back. Tr. 388. On March 14, 2013, Orden had decreased range of motion in her right shoulder and cervical back, and she had tenderness in those areas and in the thoracic back. Tr. 385. In the summer of 2013, Dr. Nussbaum documented decreased range of motion and tenderness in Orden's right shoulder at two examinations. Tr. 368-69, 371.

On January 29, 2014, Orden exhibited a decreased range of motion in her neck with painful lateral flexion, and poor range of motion in her right shoulder, which was limited to minimal flexion/extension. Tr. 356. On March 28, 2014, Orden had decreased range of motion, decreased strength, tenderness, and pain in her right shoulder, and specifically demonstrated pain with flexion, extension, and abduction. Tr. 353. In the summer of 2014, Dr. Nussbaum indicated that Orden had decreased range of motion in her right shoulder and right hip at two examinations. Tr. 330, 343. Moreover, numerous treatment notes document joint pain, gait problems, and back pain. *See* Tr. 322, 337, 343, 350, 353, 355, 359, 362, 365, 368, 371, 374, 388, 393.

Although several of Dr. Nussbaum's treatment notes contain minimal or no musculoskeletal findings and do not specifically reference Orden's neck, shoulder, or back pain, it is apparent that Orden complained of only gastrointestinal issues on those occasions. *See, e.g.*, Tr. 332-35, 339-41, 345-48, 349-51, 376-78. Thus, Orden's neck, shoulder, and back issues were

not the focus of those appointments and therefore it is not surprising that the related treatment notes do not specifically mention restrictions in those areas.

Although Dr. Nussbaum's form opinion does not elaborate on his range of motion findings, his treatment notes reveal that he regularly performed range of motion testing on Orden and specifically indicate where she is limited. Thus, the ALJ's assertion that Dr. Nussbaum's prescribed limitations "are not consistent with the evidence" due to a lack of range of motion testing is inaccurate and therefore does not constitute a "good reason" to discount Dr. Nussbaum's opinion.

### ii. Inconsistency with Dr. Boev's Findings

Dr. Nussbaum referred Orden to Dr. Boev, a neurologist, to address Orden's neck pain and and determine whether she was a candidate for surgery. Tr. 352, 357. Dr. Boev met with Orden twice. On March 11, 2014, Dr. Boev examined Orden and reviewed an MRI of her cervical spine, which he noted was "significant for disk herniation at C5-6 level, central in nature but not compressing the spinal cord or neural foramina." Tr. 403. Dr. Boev noted that Orden was "struggling with cervical discomfort," but that she was "neurologically intact" and "has not worsened since July." *Id.* Dr. Boev concluded that: "we will continue with a conservative approach to this as I do not think surgery is in order based on her imaging studies or current examination findings." *Id.*

On April 29, 2014, Dr. Boev met with Orden again and noted that she "continue[d] to have persistent neck pain," but was neurologically stable and "by imaging has nothing compressive of the spinal cord or neural foramina to speak of." Tr. 402. For that reason, Dr. Boev indicated that he would "refrain from offering her any surgical intervention" and would make a referral for pain management. *Id.*

The ALJ discounted Dr. Nussbaum's opinion because his limitations "appear inconsistent with Dr. Boev's findings reflecting [Orden]'s condition required only conservative treatment and no surgery." Tr. 29. The ALJ also noted that Dr. Nussbaum is "not a specialist." Tr. 30.

Although the ALJ is entitled to afford less weight to a medical opinion that is inconsistent with the record as a whole (*see* 20 C.F.R. § 404.1527(c)(4)), Dr. Boev's findings do not undermine Dr. Nussbaum's opinion. Dr. Boev did not opine as to Orden's ability to perform work-related functions; he merely indicated that she was not a candidate for surgery. Just because Dr. Boev found that Orden's neck condition did not require surgery, does not mean that Dr. Nussbaum's RFC assessment was entitled to only little weight. In fact, even though Dr. Boev declined to recommend Orden for surgery, both of his notes indicate that she was struggling with pain, which lends support to Dr. Nussbaum's opinion that her physical ability to work is limited. Moreover, discounting a treating physician's opinion based on the plaintiff's conservative treatment "falls far short of the standard for contradictory evidence required to override the weight normally assigned the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("The ALJ and the judge may not "impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.") (alterations in original).

The ALJ also pointed out that, unlike Dr. Boev, Dr. Nussbaum is not a specialist. Tr. 25, 30. When an ALJ weighs a physician's opinion, he is entitled to consider that physician's specialty and to give more weight to a specialist's opinion. *See* 20 C.F.R. § 404.1527(c)(5). Although Dr. Boev is a specialist in neurology and specifically examined Orden's cervical spine and evaluated her neck pain, Orden did not only have neck issues. She also alleged disability due to shoulder,

arm, and hip injuries, and the ALJ found that her severe impairments included multiple shoulder conditions, degenerative disc disease, and right hip pain. Tr. 19-21, 223.

Dr. Boev also saw Orden on only two occasions, while Dr. Nussbaum treated her every few months for three years. The SSA's regulations indicate that it will "give more weight" to a medical opinion from a treating source, because those sources are best suited "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). Dr. Nussbaum was best positioned to understand and evaluate all of Orden's impairments and how they impact her ability to work, unlike Dr. Boev who examined Orden twice and only assessed her neck condition.

Accordingly, for all the reasons stated, the Court finds that Dr. Boev's findings did not constitute a "good reason" to discount Dr. Nussbaum's opinion.

### D. Remand for Calculation of Benefits

Orden asserts that her case should be remanded solely for calculation of benefits because Dr. Nussbaum's opinion, if afforded controlling weight, establishes that she is disabled.

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008).

12

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106.

Here, the record reveals that Dr. Nussbaum treated Orden since 2012 and that he examined her every few months. Tr. 315-94, 396. Despite this treating relationship, however, the Court cannot conclude that Dr. Nussbaum's opinion is entitled to controlling weight. Although numerous treatment notes indicate that Orden experienced pain and decreased range of motion in her neck, shoulder, hip, and back, as discussed above, other notes reveal improvement in pain, range of motion, and function and that she responded favorably to physical therapy. *See, e.g.*, Tr. 262, 265-68, 270-71, 275-76, 278-79, 284-85, 288, 291, 294-95. The record also reveals that Orden had "acceptable appearing x-rays" and only "modest impingement" in the shoulder. Tr. 299, 408. Although two other providers indicated that Orden was "disabled"[5] at the time of their examinations (Tr. 287, 414), Dr. Nussbaum's opinion is the only assessment as Orden's ability to perform work-related activities.

The varied treatment notes and the fact that Dr. Nussbaum's opinion is the sole assessment of Orden's ability to work does not "provide[] persuasive proof of disability," *Parker*, 626 F.2d at 235, and thus the Court declines to remand this matter solely for calculation of benefits. Nonetheless, Orden is entitled to a proper analysis of Dr. Nussbaum's opinion and, if appropriate, "good reasons" why it must be rejected. On remand, the Court suggests that the ALJ further develop the record as to Orden's physical RFC by reconsidering Dr. Nussbaum's opinion or

---

[5] The Court notes that the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and therefore a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must find that claimant disabled. 20 C.F.R. § 404.1527(d)(1).

requesting additional information from him, obtaining a consultative examination, or seeking a medical expert's opinion.

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). Because Plaintiff filed her application over 4.5 years ago, the Court directs the Commissioner to expedite its review of this matter. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 30, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court